Donald James GRALIKE, Plaintiff,

v.

Rebecca McDowell COOK, Defendant.

No. 96–4417–CV–C–9.

United States District Court,
W.D. Missouri,
Central Division.

Jan. 29, 1998.

Arthur A. Benson, II, Gregg F. Lombardi, Arthur Benson & Associates, Kansas City, MO, for Plaintiff.

Tina M. Crow Halcomb, Michael A. Zito, Missouri Attorney General's Office, Jefferson City, MO, for Defendant.

*ORDER GRANTING "DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM" AS TO COUNT IV OF PLAINTIFF'S FIRST AMENDED COMPLAINT AND DENYING "DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM" AS TO COUNTS I, II, III AND V OF PLAINTIFF'S FIRST AMENDED COMPLAINT*

BARTLETT, Chief Judge.

Plaintiff Donald James Gralike brought this action under 42 U.S.C. § 1983 seeking declaratory and injunctive relief against Missouri Secretary of State Rebecca McDowell Cook in her official capacity. Plaintiff seeks to enjoin defendant from implementing and enforcing a recent Amendment to Article VIII of the Missouri Constitution. The Amendment to Article VIII directs members of the United States Congress from Missouri to use their delegated powers to pass a Congressional Term Limits Amendment to the United States Constitution. The Amendment also requires candidates for United States Congress to either support the con-

gressional term limits amendment or have words stating that they failed to support the amendment placed by their names on the ballot.

In Count I of the Complaint, plaintiff claims that Article VIII, as amended, places impermissible additional qualifications on candidates for United States Congress in violation of Article I of the United States Constitution. In Count II, plaintiff claims that Article VIII is unconstitutionally vague. In Count III, plaintiff claims that Article VIII violates his First Amendment right to free speech. In Count IV, plaintiff claims that a jurisdictional provision of Article VIII violates the Supremacy Clause. Finally, in Count V, plaintiff claims that Article VIII violates Article V of the United States Constitution.

On January 15, 1997, I entered an order granting in part and denying in part defendant's first Motion to Dismiss on standing, sovereign immunity and abstention grounds. In that order, I granted defendant's motion as to plaintiff's claim that the Amendment to Article VIII violates Article III of the Missouri Constitution but denied defendant's motion as to the remainder of plaintiff's claims.

Now, defendant moves to dismiss Plaintiff's First Amended Complaint under Rule 12(b)(6), Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted.

## I.

## BACKGROUND

During the November 1996 general election, the Missouri voters passed by majority vote a ballot initiative to amend Article VIII of the Missouri Constitution. The Amendment added Sections 15–22 (hereinafter collectively referred to as the Article VIII Amendment) which are intended to promote the passage of a federal constitutional amendment setting term limits for members of the United States Congress. *See* Article VIII, § 15.

Section 16 contains a proposed amendment to the United States Constitution that would limit the number of terms that one individual can serve as United States Senator or Representative.

Section 17(1) directs each member of the Missouri delegation to Congress to use "all of his or her delegated powers to pass the congressional Term Limits Amendment set forth [in section 16]." Section 17(2) requires that each Missouri Senator or Representative who fails to support the term limits amendment in one of several enumerated ways shall have the words "DISREGARDED VOTERS' INSTRUCTION ON TERM LIMITS" placed adjacent to that person's name on the primary and general election ballots.

For non-incumbent candidates for Congress, Section 18 requires that they be given an opportunity to take a "Term Limits" pledge each time they file to run for congressional office. For those who decline to make the pledge, Section 18(1) requires that the words "DECLINED TO PLEDGE TO SUPPORT TERM LIMITS" be printed next to their names on the primary and general election ballots.

The Secretary of State must decide whether words stating failure to support term limits should be placed next to a candidate's name. § 19. In making that determination, the Secretary must consider timely submitted public comments. § 19(2). The Secretary must declare within five days after the filing deadline whether the words "DECLINED TO PLEDGE TO SUPPORT TERM LIMITS" or "DISREGARDED VOTERS' INSTRUCTION ON TERM LIMITS" will be placed next to a candidate's name. § 19(4). After the Secretary makes that determination, subsections 19(5)–(6) give an aggrieved "elector" or "candidate" the opportunity to appeal the Secretary's decision to the Missouri Supreme Court. On appeal, an aggrieved "candidate" has the burden to prove by clear and convincing evidence that the Secretary erred by placing a designation next to his or her name. On the other hand, if an aggrieved "elector" appeals the Secretary's decision not to place the words stating lack of support for term limits next to a candidate's name, the Secretary has the burden to prove by clear and convincing evidence that the candidate met the require-

ments to avoid having the words placed next to the candidate's name.

Section 20 provides for automatic repeal of Sections 15–22 if the Congressional Term Limits Amendment becomes part of the United States Constitution. Section 21 provides that "[a]ny legal challenge to this Amendment shall be filed as an original action before the Supreme Court of [Missouri]." Finally, Section 22 provides for severability if any portion of the Amendment is declared invalid or unconstitutional.

Plaintiff Donald Gralike is a resident of Missouri's Third Congressional District. He is more than 25 years of age. He has been a United States citizen for more than seven years and is a taxpayer and registered voter in Missouri. Gralike was a candidate for United States Representative for the Third Congressional District of Missouri in 1976. He is currently considering announcing his candidacy for that position in the 1998 election. Under Missouri law, Gralike may not formally file a declaration of candidacy until February 1998.

## II.

### STANDARD FOR MOTION TO DISMISS

Because defendant filed an answer in this case before filing her motion to dismiss, this is technically a motion for a judgment on the pleadings under Rule 12(c), Federal Rules of Civil Procedure. However, Rule 12(c) motions are evaluated using the same standard as motions under Rule 12(b), Federal Rules of Civil Procedure. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir.1990).

In ruling on a motion to dismiss, it is the court's obligation to accept as true all factual allegations in the Complaint and all inferences that reasonably may be drawn from those facts and to construe the Complaint in the light most favorable to the complaining party. *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975) (citing *Jenkins v. McKeithen*, 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969)). A Complaint should not be dismissed for failure to state a claim for relief unless it appears beyond a doubt that the plaintiff can prove no facts that would enti-

tled plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

## III.

### ANALYSIS

**A.** *Defendant's Argument that She is Entitled to Judgment on the Pleadings on Plaintiff's Claim that the Article VIII Amendment Violates Article I of the United States Constitution*

In Count I of plaintiff's First Amended Complaint, plaintiff alleges that the Article VIII Amendment violates Article I of the United States Constitution by imposing qualifications for candidacy for United States Congress in addition to those enumerated in Article I. Complaint ¶¶ 33–36.

Defendant claims that plaintiff has failed to state a claim for relief in Count I because the Article VIII Amendment does not impose any impermissible additional qualifications for candidates for Congress and is a valid exercise of power under Article I, § 4, cl. 1 (the Elections Clause).

The Supreme Court most recently examined state authority to regulate federal congressional elections in *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 115 S.Ct. 1842, 131 L.Ed.2d 881 (1995). The plaintiff in *U.S. Term Limits* challenged an amendment to the Arkansas Constitution that precluded persons who had already served more than a specified number of terms in Congress from having their names placed on the ballot. *Id.* at 781–86, 115 S.Ct. at 1845–46.

A majority of the Supreme Court in *U.S. Term Limits* held that states do not have the power to "supplement the exclusive qualifications set forth in the text of the Constitution." *Id.* at 827, 115 S.Ct. at 1866. Those "exclusive qualifications" include the age, citizenship, and residency requirements set forth in Article I, §§ 2–3. *Id.* at 786–87, 115 S.Ct. at 1847; *see also id.* at 787–88 n. 2 (discussing several additional constitutional provisions arguably setting "qualifications" for Congress). The Court held that the provision in the Arkansas amendment prohibiting multiple-term incumbent's names from

being placed on the ballot was an attempt to impose indirectly an impermissible additional qualification. Therefore, the provision violated Article I. *Id.* at 836–38, 115 S.Ct. at 1871. In announcing its holding, the Court stated that "a state amendment is unconstitutional when it has the likely effect of handicapping a class of candidates and has the sole purpose of creating additional qualifications indirectly." *Id.* at 836, 115 S.Ct. at 1871.

Defendant offers two arguments why the Amendment to Att. VIII does not violate Article I as construed in *U.S. Term Limits.* First, defendant claims that to violate Article I, a state requirement must contain an "outright disqualification" that categorically bars a specific class of potential candidates from having their names placed on the ballot. Defendant's Suggestions at 11–13. Defendant argues that Article VIII Amendment does not prohibit any candidate from having his or her name on the ballot, regardless of the candidate's position on term limits, and, therefore, it is not an "outright disqualification."

■ Defendant's argument that only "outright disqualifications" from eligibility or access to the ballot violate Article I lacks merit. The Court's decision in *U.S. Term Limits* was not based on the conclusion that the subject restriction amounted to an outright disqualification of a class of candidates. Instead, the Supreme Court held that any attempt to indirectly add qualifications for congressional office by making it more difficult for a class of candidates to be elected violates Article I. *See id.* at 828–32, 115 S.Ct. at 1867–68.

In *U.S. Term Limits,* the defendant claimed that the Arkansas amendment did not constitute an impermissible added qualification because it did not disqualify the long-term incumbents from service in Congress but rather merely kept their names from appearing on the ballot. *U.S. Term Limits,* 514 U.S. at 825–28, 115 S.Ct. at 1866–67. Thus, the defendant argued, long-term incumbents could still run as write-in candidates and serve in office if elected. *Id.* The Supreme Court rejected that argument, stating: "In our view, an amendment with the avowed purpose and obvious effect of evading the requirements of the Qualifications Clauses by handicapping a class of candidates cannot stand." *Id.* at 831, 115 S.Ct. at 1868. Similarly, here, the fact that the Article VIII Amendment does not disqualify a class of candidates from having their names placed on the ballot—but rather disadvantages a class of candidates—makes the Amendment suspect under the reasoning in *U.S. Term Limits.*

Defendant's second argument is that the Article VIII Amendment is constitutional under the Court's holding in *U.S. Term Limits.* Defendant argues that plaintiff has failed to allege facts in his complaint sufficient to satisfy both elements of the Court's holding that "a state amendment is unconstitutional when it has the likely effect of handicapping a class of candidates and has the sole purpose of creating additional qualifications indirectly." Defendant's Suggestions at 13–14. Defendant argues that under *U.S. Term Limits,* a plaintiff must show that the state amendment violates both the purpose and effect elements in order to establish that the state amendment is unconstitutional. *Id.*

1. *The Article VIII Amendment Has the Sole Purpose of Creating Additional Qualifications Indirectly*

The sole purpose of the Article VIII Amendment is apparent from the wording of the Amendment. The stated purpose of the Article VIII Amendment is set forth in the Preamble: "The people of Missouri hereby state our intention that this initiative lead to the adoption of the following U.S. Constitutional Amendment [set forth in § 16]." Mo. Const. art. VIII, § 15. Each provision of the Amendment is designed to accomplish this purpose. The approach taken to obtain adoption of a term limits amendment is to make support for a term limits amendment a qualification for congressional office. Candidates for Congress are required to state their position on term limits. If a candidate fails to support term limits then the Secretary must place words so stating next to the candidate's name on the ballot. Thus, the Article VIII Amendment is an attempt to add indirectly a new qualification for the offices of United States Senator and Repre-

sentative from Missouri, i.e., support of term limits.

Defendant argues that the Amendment is a valid exercise of state power under the Elections Clause, which provides that "[t]he Times, Places and Manner of Elections for Senators and Representatives, shall be prescribed by each State by the Legislature thereof." U.S. Const. Art. I, § 4, cl. 1. Defendant argues that the Article VIII Amendment has a proper purpose under Article I because the Amendment ensures the disclosure of important candidate information to voters. Defendant's Reply at 2.

■ States have authority under the Elections Clause to implement procedural regulations aimed at "maintain[ing] the integrity of the political process." *U.S. Term Limits*, 514 U.S. at 834, 115 S.Ct. at 1869–70.

■ In holding the Arkansas Amendment unconstitutional in *U.S. Term Limits*, the Court distinguished between procedural regulations that are valid under the Elections clause, and substantive qualifications that violate Article I. A state's procedural regulations are valid under the Elections Clause when they serve "the state interest in protecting the integrity and regularity of the election process, an interest independent of any attempt to evade the constitutional prohibition against the imposition of additional qualifications for service in congress." *Id.* at 835, 115 S.Ct. at 1870. The Court concluded that the sole purpose of the Arkansas Amendment at issue in *U.S. Term Limits* "was to limit the terms of elected officials," and, therefore, it was not a valid exercise of power under the Elections Clause. *Id.* at 836–38, 115 S.Ct. at 1871.

In this case, the undisputed purpose of the Missouri Amendment is to encourage congressional delegates to adopt a constitutional term limits amendment, not to ensure that voters are fully informed about the candidates. Significantly, defendant has not argued—nor could she in light of the statement in the preamble to the contrary—that voter education was the ultimate purpose behind the Article VIII Amendment. Even if one of the purposes of the Amendment is to ensure that Missouri voters are aware of a candi-

date's position on term limits, that purpose is not independent of an attempt to impose an additional qualification on candidates for Congress. Therefore, like the statute at issue in *U.S. Term Limits*, plaintiff stated a claim that the Article VIII Amendment has the sole purpose of creating indirectly an additional qualification for United States Congress.

2. *The Article VIII Amendment Has the Likely Effect of Handicapping a Class of Candidates*

Defendant argues that plaintiff has failed to show that the Amendment has the "likely effect of handicapping a class of candidates" because plaintiff has failed to demonstrate how having the words stating lack of support for term limits placed next to his name on the ballot would hurt plaintiff's chances of being elected. Defendant acknowledges that plaintiff alleges in his Complaint that he believes that having the words stating lack of support for them next to his name will hurt his chances of being elected. However, defendant argues that "plaintiff's pleading alone does not establish that Missouri Article VIII will 'have the likely effect of handicapping a class of candidates.'" Defendant's Suggestions at 14.

Presumably, defendant is arguing that whether a state amendment has the "likely effect of handicapping a class of candidates" is a question of fact that cannot be resolved based on the pleadings alone. However, for the purposes of a motion for judgment on the pleadings, the factual allegations in the pleadings must be accepted as true. Moreover, defendant's argument runs counter to defendant's assertion that "[t]he issues before the Court are issues of law ." Defendant's Reply at 1.

■ The approach taken by the Supreme Court in *U.S. Term Limits* suggests that the question whether a state provision has the "likely effect of handicapping a class of candidates" is not a question of fact. In coming to the conclusion that the Arkansas amendment had the likely effect of handicapping long-term incumbents, the majority expressly refused to rely on evidence that a write-in candidate had a slim chance of success. *U.S.*

*Term Limits,* 514 U.S. at 836–38, 115 S.Ct. at 1871; *see also U.S. Term Limits,* 514 U.S. at 918–22 & no. 40, 115 S.Ct. 1910–11 & n. 40 (Thomas, J., dissenting) (noting that it would have been improper for the majority to have relied on any binding factual determinations made by the Arkansas trial court on issues of disputed fact in ruling cross-motions for summary judgment).

Therefore, it is not necessary to have a factfinder decide as a factual matter whether the challenged state law will seriously harm a specific candidate's chances of winning the election. The question whether a state amendment has the likely effect of handicapping a class of candidates is a question of law for the Court. The question is simply whether the Missouri Amendment is likely to put a class of candidates at a disadvantage as compared to other candidates.

There can be little dispute that the Missouri Amendment singles out an identifiable class of candidates for special treatment. Only those non-incumbent candidates who refuse to take the "Term Limits Pledge" and those incumbent candidates who the Secretary of State determines have failed to act in favor of term limits as required by the Amendment will have words stating failure to support term limits placed next to their names on the ballot. Candidates who agree to take the pledge or who maintain a record on the term limits issue that satisfies the Secretary will not have the informative words placed next to their names on the ballot.

The next question is whether the Amendment is likely to disadvantage the class of candidates that will have the informative words placed next to their names. As discussed previously in this opinion, the Amendment was adopted by the voters and is intended to obtain the support of Missouri congressional delegation for a term limits amendment. The voters, by adopting the Amendment, sought to identify all congressional candidates who do not support term limits. In light of the purpose of the Amendment, the only intended effect of placing the words next to a name on the ballot is to disadvantage the candidate in the eyes of term limits supporters in the electorate.

Further, the words stating lack of support for term limits are the only issue-specific information that can appear next to any candidate's name. The words are printed in capital letters. Significantly, the language used is pejorative. Both "DISREGARDED VOTERS' INSTRUCTIONS" and "DECLINED TO PLEDGE" carry negative connotations that suggest that the candidate has done something wrong and imply official state disapproval of those candidates branded with a designation.

■■■ States have the authority under the Elections Clause to adopt "generally applicable and evenhanded restrictions that protect the integrity and reliability of the electoral process." *U.S. Term Limits,* 514 U.S. at 834, 115 S.Ct. at 1870 (quoting *Anderson v. Celebrezze,* 460 U.S. 780, 788 n. 9, 103 S.Ct. 1564, 1570 n. 9, 75 L.Ed.2d 547 (1983)). States may impose procedural regulations intended to eliminate voter confusion and to promote candid disclosure by candidates. *Id.* (citing *Munro v. Socialist Workers Party,* 479 U.S. 189, 107 S.Ct. 533, 93 L.Ed.2d 499 (1986); *Storer v. Brown,* 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974)). Even if one could persuasively argue that the Amendment was intended to eliminate voter confusion and to promote candid disclosure (which it was not), the Article VIII Amendment is not evenhanded. Only those candidates who refuse to support term limits are singled out and branded with a conspicuous and negative statement next to their names. Therefore, plaintiff has stated a claim that the Article VIII Amendment is likely to handicap those candidates who refuse to decline to support term limits.

In drawing a distinction between what a state may and may not do consistent with the Elections Clause, the Supreme Court in *U.S. Term Limits* stated that "the Framers understood the Elections Clause as a grant of authority to issue procedural regulations, and not as a source of power to dictate electoral outcomes, to favor or disfavor a class of candidates, or to evade important constitutional restraints." *U.S. Term Limits,* 514 U.S. at 833, 115 S.Ct. at 1869. The undisputed intent of the Missouri Amendment is to influence the outcome of voting on any pro-

posed term limits amendment by favoring the class of candidates who support the term limits amendment set forth in the Amendment to Article VIII. Plaintiff has stated a claim that this attempt to influence the outcome of federal elections by disfavoring the class of candidates who refuse to support the term limits Amendment set forth in Article VIII violates Article I and exceeds the power granted to states under the Elections Clause to regulate the time, place, and manner of federal elections. Therefore, Defendant's motion for judgment on the pleadings on plaintiff's claim that the Amendment violates Article I of the United States Constitution will be denied.

B. *Defendant's Claim that She is Entitled to Judgment on the Pleadings on Plaintiff's Claim that the Article VIII Amendment Violates the First Amendment Right to Free Speech*

■ Plaintiff argues that the Article VIII Amendment infringes on plaintiff's freedom of expression by attempting to compel a candidate to take a specific position in favor of term limits and by limiting the candidate's ability to fully express the candidate's views on term limits. *See* Plaintiff's Response at 23–26. Plaintiff claims that the Amendment restricts a candidates' ability to fully express the candidate's views on term limits by requiring the candidate to take a simple yes or no position on term limits without permitting an explanation.

Defendant argues that the Article VIII Amendment does not violate the First Amendment right against compelled speech because running for office is a voluntary act and because a candidate does not face any criminal penalties for failing to speak in favor of term limits.

1. *The Article VIII Amendment Infringes on Plaintiff's Protected First Amendment Rights*

The First Amendment, made applicable to the states through the Fourteenth Amendment, prohibits a state from making any law "abridging the freedom of speech." *Meyer v. Grant,* 486 U.S. 414, 420, 108 S.Ct. 1886, 1891, 100 L.Ed.2d 425 (1988) (quoting U.S. Const. amend I). The First Amendment was

"fashioned to assure the unfettered interchange of ideas for bringing about political and social changes desired by the people." *Id.* Therefore, the First Amendment offers its greatest protection for political speech and speech that involves matters of public concern. *Id.* at 419–23, 108 S.Ct. at 1891–92 (citation omitted). Furthermore, "the right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard,* 430 U.S. 705, 714, 97 S.Ct. 1428, 1435, 51 L.Ed.2d 752 (1977); *see also Miami Herald Publishing Co. v. Tornillo,* 418 U.S. 241, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974) (holding that a state law requiring newspapers to publish the replies of political candidates whom they had criticized violated the First Amendment right to free press).

■ Candidates for political office are not afforded any less First Amendment protection than any other individual. *Brown v. Hartlage,* 456 U.S. 45, 53, 102 S.Ct. 1523, 1524, 71 L.Ed.2d 732 (1982). In fact, the First Amendment's "constitutional guarantee has its fullest and most urgent application precisely to the conduct of campaigns for political office." *Id.* Therefore, candidates must be afforded an "unfettered opportunity to make their views known so that the electorate may intelligently evaluate the candidates' personal qualities and their positions on vital public issues before choosing among them on election day." *Id.* at 53, 102 S.Ct. at 1529.

The Supreme Court has held that the First Amendment protects candidates from state laws that "reduce the quantity of [a candidate's] expression by restricting the number of issues discussed, the depth of their exploration, and the size of the audience reached." *Buckley v. Valeo,* 424 U.S. 1, 19, 96 S.Ct. 612, 634, 46 L.Ed.2d 659 (1976). Accordingly, the Court held that the First Amendment protects candidates from laws that restrict the amount of money a candidate can spend on political advertising during a campaign. *Id.* Similarly, a law that prohibited the payment of petition circulators infringed on "core political speech" by limiting the "number of voices" who could speak

on a particular public issue, the hours they could speak, and the size of the audience they could reach. *Meyer*, 486 U.S. at 422, 108 S.Ct. at 1892. Because the restriction had the effect of reducing the total quantum of speech on a particular public issue, it burdened important First Amendment rights. *Id.* at 421–25, 108 S.Ct. at 1892–93.

Like the restrictions at issue in *Meyer* and *Buckley*, the term limits designation provisions of Article VIII burden a candidate's right to speak freely on the issue of term limits. The Amendment limits a candidate's speech in several ways.

First, the Amendment punishes candidates for speaking out against term limits by requiring the Secretary of State to place negative words next to their names on the ballot. Thus, the Amendment interferes directly with a candidate's right to speak freely on a matter of public concern in the same way that criminal sanctions or fines would.

■ Second, like the laws at issue in *Wooley* and *Miami Herald*, the Amendment compels candidates to speak on the term limits issue. Non-incumbent candidates are required to take the term limits pledge or face the penalty of having negative words placed next to their name on the ballot. Similarly, incumbent candidates must take affirmative action to show their support for term limits to avoid having the negative words placed next to their names on the ballot. The Amendment uses the threat of being disadvantaged in the election to coerce candidates into taking a position on the term limits issue. A state law infringes on protected First Amendment rights whether it compels an individual to speak by threatening criminal prosecution, *see, e.g., Wooley*, 430 U.S. at 713–15, 97 S.Ct. at 1435, or rather simply requires an individual to speak as a condition precedent to engaging in an otherwise lawful activity, *see, e.g., Miami Herald*, 418 U.S. at 256–58, 94 S.Ct. at 2839. Thus, the Amendment infringes on a candidate's right to refrain from speaking on an issue. Also, the Amendment attempts to coerce candidates into taking a specific position on the term limits issue. The Article VIII Amendment requires candidates to either speak in favor of the term limits amend-

ment set forth in the Article VIII Amendment or face having the Secretary of State place negative wording next to the candidates' names on the ballot.

Further, a candidate for political office does not waive the candidate's First Amendment rights by running for office. The right against state-compelled speech does not lose its force just because affected individuals could voluntarily refrain from undertaking the activity that will subject them to the compelled speech. The plaintiff in *Wooley*, for example, could have refrained from owning a car to avoid having to display the state motto on his license plate, yet the Supreme Court still found unconstitutional a state law that penalized plaintiff for covering up the motto on his license plate. *See Wooley*, 430 U.S. at 711–13, 97 S.Ct. at 1434; *see also Miami Herald*, 418 U.S. at 256–58, 94 S.Ct. at 2839 (holding that the right-of-access law infringed on protected First Amendment rights because it might discourage editors from engaging in the voluntary act of publishing controversial statements about candidates).

Therefore, plaintiff has stated a claim that the Amendment infringes on a candidate's protected First Amendment rights.

### 2. The Article VIII Amendment is Subject to Strict Scrutiny

Having concluded that plaintiff has stated a claim that the Article VIII Amendment infringes on the First Amendment rights of a candidate for Congress in Missouri, it is necessary to decide whether the State's interest in enforcing the Amendment is sufficiently compelling to outweigh the burden it places on candidates' speech. *Wooley*, 430 U.S. at 715–17, 97 S.Ct. at 1436.

Defendant argues that a lower level of scrutiny should be applied in this case, one that "weighs the magnitude of the states' [sic] interest versus the extent of the burden imposed." Defendant's Suggestions at 23 (citing *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 214, 107 S.Ct. 544, 548, 93 L.Ed.2d 514 (1986)). Defendant relies on the Supreme Court's decision in *Burdick v. Takushi*, 504 U.S. 428, 112 S.Ct. 2059,

119 L.Ed.2d 245 (1992), in which the Supreme Court held that when state laws impose only "reasonable, nondiscriminatory restrictions upon the First and Fourteenth Amendment rights of voters, the State's important regulatory interests are generally sufficient to justify the restrictions." *Id.* at 432–34, 112 S.Ct. at 2063 (internal quotation marks omitted).

In *Burdick,* the Court concluded that Hawaii's prohibition on write-in voting was a "reasonable, nondiscriminatory restriction." *Id.* at 432–40, 112 S.Ct. at 2063–66 (finding that "there is nothing content-based about a flat ban on all forms of write-in ballots").

State laws that restrict speech based on its content are subject to strict scrutiny. *Turner Broadcasting Sys., Inc. v. F.C.C.,* 512 U.S. 622, 641–43, 114 S.Ct. 2445, 2459, 129 L.Ed.2d 497 (1994). "[A]s a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of their ideas or views expressed are content-based." *Turner Broadcasting,* 512 U.S. at 643, 114 S.Ct. at 2459.

Here, in stark contrast to the situation in *Burdick,* the Article VIII Amendment, on its face, favors a particular viewpoint on term limits and penalizes candidates who fail to support term limits. As a content-based restriction on speech, the Amendment is subject to strict scrutiny.

Defendant next argues that even if strict scrutiny is applied, the Article VIII Amendment does not violate the First Amendment because Missouri has a compelling interest in "promoting an informed electorate." Defendant's Suggestions at 24. According to defendant, the words stating failure to support term limits perform a function similar to the placement of party labels next to a candidate's name on the ballot: they provide a "shorthand designation" for each candidate's view on term limits. *Id.* at 25; *see Tashjian,* 479 U.S. at 218–222, 107 S.Ct. at 551–52 (recognizing the legitimate state interest in fostering an informed and educated electorate).

Even assuming that a state has a compelling interest in promoting an informed electorate, the approach taken by the state of Missouri in the Article VIII Amendment cannot withstand strict scrutiny. First, as discussed earlier in this opinion, the ultimate purpose of the Article VIII Amendment is to encourage the passage of a term limits amendment. The ultimate purpose of the Amendment belies the state's argument that the Amendment was intended merely to keep voters informed about a candidate's position on term limits. Even recognizing that voter education is a compelling state interest, the Amendment does not appear to be intended or fashioned to attain that goal.

Moreover, even if it is assumed that the Article VIII Amendment does in fact provide voters with more information than they would have in the absence of the Amendment, the Amendment is not narrowly tailored to further the state's interest in educating voters. The position of all candidates on term limits is not put on the ballot. The electorate is told only about the position of those candidates who do not support term limits. Furthermore, the words placed next to certain candidates' names on the ballots tell voters only that those candidates refused to support the specific term limits amendment set forth in Section 16, and they do so in a negative, biased manner. The state may not single out and stigmatize a class of candidates under the guise of educating the voters. Plaintiff has stated a claim that the Amendment is not narrowly tailored to accomplish a compelling state interest and thus fails to survive strict scrutiny review. Accordingly, defendant's motion for judgment on the pleadings on plaintiff's First Amendment challenge will be denied.

C. *Defendant's Motion for Judgment on the Pleadings on Plaintiff's Claim the Article VIII Amendment Is Unconstitutionally Vague and Overbroad*

1. *The Article VIII Amendment is Unconstitutionally Vague*

Plaintiff argues that the Amendment is unconstitutionally vague because the requirements set forth in Sections 17 and 18 and the enforcement mechanisms set forth in Section 19 are confusing and unclear. Plaintiff argues that if the Amendment goes into effect, Missouri Senators and Representa-

tives will face situations in which they do not know how to conform their conduct to the Amendment's requirements. In addition, plaintiff claims that the Amendment grants too much discretion to the Secretary of State to decide whether to place words next to a candidate's name stating that the candidate failed to support term limits without providing sufficient direction about how the Secretary of State should exercise the discretion.

Defendant argues that even if the provisions of Article VIII that relate to incumbent candidates are ambiguous, the Amendment is clear as to plaintiff and other non-incumbent candidates: "if [plaintiff] wishes to avoid the designation [that he does not support term limits]; he must take the pledge." Defendant's Suggestions at 18. Defendant has not addressed whether the Amendment is vague as it applies to incumbent candidates.

■ To demonstrate that a law is unconstitutionally vague on its face, a plaintiff must show that the law is impermissibly vague in all of its applications. *Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 497–99, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362. Therefore, if defendant is correct that the Amendment is not unconstitutionally vague as applied to Gralike and other non-incumbents, plaintiff's vagueness arguments will fail.

However, defendant's argument lacks merit because any ambiguities in the Amendment apply to both incumbent and non-incumbent candidates. First, the enforcement mechanisms in Section 19 apply equally to both incumbent and non-incumbent candidates. Thus, any ambiguities in Section 19 apply to both incumbent and non-incumbent candidates. Second, non-incumbents are affected by the affirmative requirements for incumbents listed in Section 17 because the term limits pledge in Section 18 requires non-incumbents to agree to abide by those requirements if elected. In taking the pledge, a candidate agrees to "use all my legislative powers to enact the proposed Constitutional Amendment set forth in the Term Limits Act of 1996. If elected, I pledge to vote in such a way that the designation 'DISREGARDED VOTERS' INSTRUCTIONS ON TERM LIMITS' will not appear adjacent to my name." Mo. Const. Art. VIII, § 18(3). Thus, non-incumbent candidates are also affected by any ambiguities in Section 17.

The Supreme Court has recognized several factors to be weighed in evaluating whether a law that is so vague that it violates due process. *Village of Hoffman Estates v. Flipside. Hoffman Estates*, 455 U.S. 489, 497–99, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982). A court should consider whether the law "trap[s] the innocent by not providing fair warning" about what conduct is lawful and what is not. Id. (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972)). The court should also assess whether the law "impermissibly delegates basic policy matters to [individuals] on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory applications." *Id.* Finally, "perhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights. If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply." *Id.* at 497–503, 102 S.Ct. at 1193–94.

In articulating those factors, however, the Court warned that they should not "be mechanically applied." Instead, "[t]he degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment." *Id.* at 498, 102 S.Ct. at 1193.

Here, an analysis of the first factor recognized by the Supreme Court in *Village of Hoffman Estates* weighs in favor of a conclusion that the Article VIII Amendment is unconstitutionally vague. The Amendment does not provide individuals of ordinary intelligence with sufficient guidance to know what conduct will subject them to having language stating failure to support term limits placed next to their names. For example, Section 17 does not inform a Senator or Representative what must be done in the event that a term limits amendment is proposed that is different than the one set forth in Section 16. Does the Amendment require a Missouri del-

egate to vote against any term limits legislation that differs in any significant way from the proposed amendment set forth in Section 16, or will failing to vote in favor of term limits legislation in any form subject a Senator or Representative to having the designation placed next to his or her name?

Analyzing the Article VIII Amendment in light of the second factor recognized by the Supreme Court in *Village of Hoffman Estates* also leads to the conclusion that the Amendment is void for vagueness. Section 19(1) states that the "Secretary of State shall be responsible for making an accurate determination as to whether a candidate" should have words stating failure to support term limits placed next to his or her name. However, Section 19 does not set forth any specific standards to guide the Secretary in making an "accurate determination." Section 19(2) requires the Secretary to "consider timely public comments prior to making the determination." However, Section 19 does not set forth what weight should be given to public comments. By delegating broad discretion to the Secretary of State without providing a sufficiently detailed set of guidelines for making the determination, the law "impermissibly delegates basic policy matters" to the Secretary.

In addition, any "elector" can appeal the Secretary's decision *not* to place words stating failure to support term limits next to a candidate's name. If this occurs, the burden is on the *Secretary* to prove by clear and convincing evidence that the candidate should not have words stating failure to support term limits placed next to the candidate's name. S 19(5). The term "elector" is not defined. It is unclear who is intended to have the power under Section 19(5) to challenge the Secretary's decision not to place the negative words next to a candidate's name on the ballot. Section 19(5) delegates power to an undefined group to challenge the Secretary's decision.

Finally, the most important factor that the *Village of Hoffman Estates* Court recognized as affecting whether a law is unconstitutionally vague—whether the law threatens to inhibit the exercise of constitutional rights—also weighs against the constitutionality of the Amendment in this case based on the allegations in plaintiff's Complaint. Plaintiff stated a claim that the absence of clear standards governing decisionmaking by the Secretary of State and "electors" threatens to chill core political speech. Also, plaintiff has stated a claim that, in the absence of clear standards governing decisionmaking by the Secretary of State, candidates would be uncertain how to act to avoid facing the negative words placed next to their names on the ballot. Candidates, therefore, would be discouraged from candidly expressing their views on terms limits. The same vagueness about standards governing the Secretary of State's discretion could discourage potential candidates from running for office.

Therefore, plaintiff has stated facts in his Complaint sufficient to state a claim that the Article VIII Amendment is unconstitutionally vague.

■■■ Defendant has stated that the Secretary plans, at some point, to adopt implementing regulations that will clarify the ambiguities in the requirements and enforcement provisions of the Amendment. Laws containing ambiguous provisions are not void for vagueness if the ambiguities can be clarified through the adoption of administrative rules and regulations. *See Village of Hoffman Estates*, 455 U.S. at 503–05, 102 S.Ct. at 1196. On the record before me, however, I cannot assume that regulations will be adopted. Furthermore, I cannot predict whether the regulations adopted will remedy the vagueness problems with the Amendment. Therefore, defendant's Motion to Dismiss Count II of plaintiff's Complaint will be denied.

2. *The Article VIII Amendment Is Unconstitutionally Overbroad*

To successfully challenge a law for facial overbreadth, a plaintiff must show that the law "reaches a substantial amount of constitutionally protected conduct." *Village of Hoffman Estates*, 455 U.S. at 494, 102 S.Ct. at 1191.

Having already concluded that plaintiff has stated a claim that the Article VIII Amendment impermissibly infringes on protected

First Amendment rights and that the Amendment is not narrowly tailored to further a compelling state interest, and having concluded that under the facts alleged in the Complaint the Article VIII Amendment is unconstitutionally vague, it follows that plaintiff has stated a claim that the Article VIII Amendment reaches a substantial amount of constitutionally protected conduct. Therefore, plaintiff has stated a claim that the Article VIII Amendment is unconstitutionally overbroad.

D. *Defendant's Motion for Judgment on the Pleadings Plaintiff's Claim that the Jurisdictional Provision of Article VIII Violates the Supremacy Clause*

Article VIII, Section 21 states: "Any legal challenge to this Amendment shall be filed as an original action before the Supreme Court of this State." Plaintiff claims that Section 21 violates the Supremacy Clause of the United States Constitution because it interferes with federal jurisdiction over federal constitutional challenges to the Article VIII Amendment. Plaintiff's Response at 29–30.

Defendant argues that the provision does not limit federal court jurisdiction but rather grants the Missouri Supreme Court original jurisdiction to hear a constitutional challenge to the Amendment. Defendant's Suggestions at 28. Defendant does not argue that this court lacks jurisdiction over this case based on Section 21.

Because defendant does not argue that Section 21 precludes federal jurisdiction in this case, it is not necessary to decide whether Section 21 would violate the Supremacy Clause if it were interpreted to preclude federal court jurisdiction over a federal constitutional challenge to the Article VIII Amendment. Therefore, I agree with defendant that there is no justiciable issue in this case whether Section 21 violates the Supremacy Clause.

■ Plaintiff argues that even though defendant has not raised the jurisdictional provision as a defense in this case, the issue whether Section 21 violates the Supremacy Clause is justiciable because it is "capable of repetition, yet evading review."

Plaintiff's argument lacks merit.

■ For an issue to be justiciable because it is "capable of repetition, yet evading review," despite the fact that the plaintiff lacks a concrete interest in the outcome, two circumstances must be present. "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 481, 110 S.Ct. 1249, 1255, 108 L.Ed.2d 400 (1990) (internal quotations and citations omitted).

Here, neither of the two circumstances is present. If plaintiff were to bring another case in federal court challenging the constitutionality of the Article VIII Amendment and the defendant raises the defense that Section 21 precludes a federal court from hearing a federal constitutional challenge to the Article VIII Amendment, the federal court would have an adequate opportunity to resolve the issue at that time. Furthermore, plaintiff will either prevail in this case in having the Amendment declared unconstitutional, or he will not prevail, in which case any future attempts by plaintiff to challenge the constitutionality of the Amendment would be barred by either res judicata or collateral estoppel. Therefore, it is not likely that plaintiff will ever face again any issue involving the effect of Section 21 on federal jurisdiction. Accordingly, defendant's motion for judgment on the pleadings will be granted on Count IV of the Complaint.

E. *Defendant's Motion for Judgment on the Pleadings on Plaintiff's Claim that Article VIII Violates Article V of the United States Constitution*

Plaintiff claims that the Article VIII Amendment violates the requirement in Article V of the United States Constitution that all proposed constitutional amendments come from Congress or from the state legislatures. Plaintiff argues that the Amendment "is an improper attempt by state citizens to control the federal constitutional amendment process." Plaintiff's Response at 32.

Defendant argues that the Amendment is merely intended to bring the issue of term

limits before Congress, and is not an attempt by Missouri voters to propose and ratify constitutional amendments in a manner that is not allowed under Article V. Defendant argues that the Article VIII Amendment does not violate Article V because a candidate does not face any adverse consequences for failing to support the proposed term limits amendment.

Article V of the United States Constitution provides:

> The Congress, whenever two-thirds of both houses shall deem it necessary, shall propose amendments to this Constitution, or, on the application of the Legislatures of two-thirds of the several states, shall call a convention for proposing amendments, which, in either case shall be valid to all intents and purposes, as part of this Constitution, when ratified by the Legislatures of three fourths of the several states, or by conventions in three-fourths thereof, as the one or the other mode of ratification may be proposed by the Congress....

In *Hawke v. Smith*, 253 U.S. 221, 40 S.Ct. 495, 64 L.Ed. 871 (1920), the Court struck down a provision of the Ohio Constitution that allowed Ohio voters to ratify a proposed constitutional amendment by referendum. The Court stated:

> The determination of the method of ratification is the exercise of a national power specifically granted by the Constitution; that power is conferred by Congress, and is limited to two methods, by action of the Legislatures of three-fourths of the states or conventions in a like number of states. The framers of the Constitution might have adopted a different method. Ratification might have been left to a vote of the people, or to some authority of government other than that selected. The language of the article is plain, and admits of no doubt in its interpretation. It is not the function of courts or legislative bodies, national or state, to alter the method which the Constitution has fixed.

*Hawke*, 253 U.S. at 226–29, 40 S.Ct. at 497 (internal citation omitted).

Two years later, in *Leser v. Garnett*, 258 U.S. 130, 42 S.Ct. 217, 66 L.Ed. 505 (1922), the Supreme court revisited the issue of a state's power to alter the specific procedures for ratification set forth in Article V. In *Leser*, following the ratification of the Nineteenth Amendment, several registered voters moved to have the names of female voters stricken from the list of registered voters. *Id.* at 131, 42 S.Ct. at 217. The plaintiffs argued that the state legislatures lacked power to ratify a federal constitutional amendment that would be invalid under their own state constitutions. In rejecting the plaintiffs' claims, the Court reaffirmed its holding in *Hawke* that the power to ratify a proposed constitutional amendment is a federal power that "transcends any limitations sought to be imposed by the people of a state." *Id.* at 137, 42 S.Ct. at 218.

Several lower courts have held unconstitutional state ballot measures intended to indirectly alter the ratification procedures set forth in Article V. *See State ex rel. Harper v. Waltermire*, 213 Mont. 425, 691 P.2d 826 (1984) (holding that a state provision violated Article V where the provision directed the state legislature to submit an application to Congress to propose a balanced-budget amendment and provided that if the legislators failed to make the application within 90 days, they would remain in session without pay until they made the application); *AFL–CIO v. Eu*, 36 Cal.3d 687, 206 Cal.Rptr. 89, 686 P.2d 609 (1984) (holding that a state provision violated Article V where the provision required that state legislators either make an application to Congress to propose a balanced-budget amendment or lose their salaries). The courts in *Harper* and *Eu* relied on the Supreme Court's holdings in *Hawke* and *Leser* that Article V empowered state legislative bodies—and not the electorate of a state in general—to propose and ratify constitutional amendments. Consequently, they reasoned, the framers of Article V contemplated that the decisions to propose or ratify a constitutional amendment be made through the "deliberative process[es]" in which legislators are "free to vote their best judgement, responsible to their constituents through the electoral process, not puppet legislators coerced or compelled by loss of salary or otherwise to vote in favor of a proposal they may believe unwise." *Harper*,

691 P.2d at 828; *Eu*, 206 Cal.Rptr. 89, 686 P.2d at 613.

Applying this same reasoning, two other courts that have struck down state provisions nearly identical to the Article VIII Amendment on Article V grounds. *See League of Women Voters v. Gwadosky*, 966 F.Supp. 52, 53–55, 63 (D.Me.1997); *Donovan v. Priest*, 326 Ark. 353, 931 S.W.2d 119, 122–24, 128 (1996), *cert. denied sub nom. Arkansas v. Donovan*, —— U.S. ——, 117 S.Ct. 1081, 137 L.Ed.2d 216 (1997). Both courts held that a referendum passed by the voters of a state which is intended to coerce state and federal elected officials into proposing or ratifying a term limits amendment to the Constitution violates Article V. *Gwadosky*, 966 F.Supp. at 59–61; *Donovan*, 931 S.W.2d at 128. As the *Gwadosky* court stated: "A citizen's role is outside the Article V process. The citizen votes to elect the state's federal and state lawmakers. These elected officials, in turn, through a deliberative and independent process, propose and ratify constitutional amendments when this becomes necessary." *Gwadosky*, 966 F.Supp. at 59–61.

Both the *Gwadosky* and *Donovan* courts held that provisions requiring ballot labels for candidates who failed to support term limits would have an impermissibly coercive impact on state and federal legislators. The threat of having negative words placed next to a legislator's name in the next election would place an undue influence on the legislator to vote in favor of term limits rather than exercise his or her own independent judgment as is contemplated by Article V of the United States Constitution. *Gwadosky*, 966 F.Supp. at 60; *Donovan*, 931 S.W.2d at 128.

▮ In this case, I am persuaded by the decisions of United States District Court for the District of Maine and the Arkansas Supreme Court that the Article VIII Amendment violates Article V. Article V gives authority to Congress and to state legislative bodies, not to the citizens of the states, to propose constitutional amendments. On its face, the Missouri Amendment is intended to "lead to the adoption of the ... U.S. Constitutional Amendment [in § 16]." The attempt by the people of Missouri to use the threat of

negative ballot designations to "encourage" their congressional delegates to propose a term limits amendment violates Article V because it interferes with the independent judgment of state legislators or convention delegates that is contemplated by Article V. Because the Amendment is an attempt by Missouri citizens to do indirectly what Article V prohibits them from doing directly, plaintiff has stated a claim that the Amendments to Article VIII are unconstitutional under Article V of the United States Constitution.

Defendant's argument that a candidate does not face any adverse consequences for failing to support the proposed term limits amendment is not persuasive. The express intent of the Amendment is "that the initiative lead to the adoption of the [term limits amendment]." § 15. Like the nearly identical labels at issue in the *Gwadosky* case, the phrases that the Amendment requires the Secretary to place next to the name of each candidate who fails to support term limits "are explicitly, and this Court believes effectively, targeted to persuade voters that all candidates so labeled are unworthy of public office. They are intentionally intimidating." *Gwadosky*, 966 F.Supp. at 60.

Defendant also argues that plaintiff lacks standing to attack the Article VIII Amendment on Article V grounds because plaintiff is not an incumbent candidate. Defendant's Suggestions at 29.

Section 18 requires non-incumbents to take a "Term Limits" pledge in which each candidate states: "If elected, I pledge to vote in such a way that the designation 'DISREGARDED VOTERS' INSTRUCTION ON TERM LIMITS' will not appear adjacent to my name." To avoid the negative designation, a non-incumbent must pledge before the election to refrain from exercising his independent judgment on the term limits issue once elected. Therefore, I do not find persuasive defendant's argument that plaintiff lacks standing to raise the Article V issue.

Accordingly, defendant's Motion for Judgment on the Pleadings on Count V will be denied.

## V.

### CONCLUSION

This case is before the Court on defendant's Motion for Judgment on the Pleadings. After reviewing the issues presented in light of the pleadings in this case, many of plaintiff's challenges to the Article VIII Amendment appear to be based on a legal, not factual, basis. In light of conclusions reached in this opinion, plaintiff appears likely to prevail on the merits of several of his legal arguments. Because of the legal nature of many of the issues raised by defendant, a reader of this opinion might be misled by the language used that I am ruling on the merits. My intent is to rule only on the issues raised by defendant involving whether a claim or claims have been stated by the plaintiff. Any ruling on the merits must await further developments in this case.

Accordingly, it is ORDERED that:

1) on Count IV of plaintiff's First Amended Complaint, defendant's Motion for Judgment on the Pleadings (Doc. No. 45) is granted; and

2) on Counts I, II, III, and V, defendant's Motion for Judgment on the Pleadings is denied.