**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

————————

No. 97-3500

————————

| | |
|---|---|
| Scope Pictures, of Missouri, Inc.; Ray's Play Pen, Inc.; Time for News, Inc.; Svec Company; Larry H. Minkoff; Jak, Inc.; Kelkin, Inc., | * <br> * <br> * <br> * <br> * |
| Plaintiffs - Appellants, | *   Appeal from the United States <br> *   District Court for the <br> *   Western District of Missouri. |
| v. | * <br> * |
| City of Kansas City, | * <br> * |
| Defendant - Appellee. | * |

————————

Submitted: March 9, 1998
Filed: April 20, 1998

————————

Before BOWMAN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and MONTGOMERY, District Judge.[1]

————————

BOWMAN, Circuit Judge.

The appellants sued the City of Kansas City, Missouri, under 42 U.S.C. § 1983 (1994), challenging the validity of the Motion Picture Arcade Booth Establishments Ordinance. See Kansas City, Mo., Code of Ordinances ch. 12, art. VII, §§ 12-275 to

———————————

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota, sitting by designation.

12-283 (1997).[2]  The City enacted the ordinance in mid-1997 to regulate video viewing booths located in adult bookstores.  In passing the ordinance, the City intended "to further the public health and safety of motion picture arcade booth establishments by reducing the likelihood that patrons will engage in [various sexual activities] within such commercial premises."  Id. § 12-275(a).  The City determined regulation of such facilities was needed to prevent the spread of sexually transmitted diseases that may occur "[b]ecause [of] motion picture arcade booth establishments, structures, or parts thereof which, due to their design, are used for sexual conduct."  Id. § 12-275(b).  The appellants, who each operate adult entertainment establishments, sought declaratory and injunctive relief against the enforcement of the ordinance, asserting both federal and supplemental state constitutional claims.  After two evidentiary hearings, the District Court[3] entered judgment for the City, and the appellants appeal.  We affirm.

There are several provisions in the ordinance about which the appellants complain.  First, the ordinance prohibits doors on motion picture arcade booths (the "open-booth" requirement).  Second, the ordinance requires motion picture arcade establishments to post signs and make available to patrons pamphlets containing information on sexually transmitted diseases.  Finally, the ordinance requires that motion picture arcade booths be maintained in a clean and sanitary condition.

The appellants first contend that the ordinance is overbroad, thus running afoul of the Constitution.  The purpose of the ordinance is to regulate "[m]otion picture arcade booth establishments," meaning "[a]ny business wherein one or more motion picture arcade booths are located."  Id. § 12-276(b).  The ordinance defines a "[m]otion picture arcade booth" as:

_____

[2]Hereinafter sections of ch. 12, art. VII of the Kansas City, Missouri, Code of Ordinances will be cited as "Ordinance."

[3]The Honorable Gary A. Fenner, United States District Judge for the Western District Of Missouri.

> Any booth, cubicle, stall or compartment which is designed, constructed or used to hold or seat patrons and is used for viewing live performances or for presenting moving pictures or viewing publications by any photographic, electronic, magnetic, digital or other means or medium (including, but not limited to, film, video or magnetic tape, laser disc, cd-rom, books, magazines or periodicals) for observation by patrons therein. . . . A motion picture arcade booth shall not mean a theater, moviehouse, playhouse or a room or enclosure or portion thereof which is designed, constructed or used to seat more than ten persons.

Id. § 12-276(a). The appellants claim that the ordinance, as written, would apply to all small media facilities, including those having no involvement in the dissemination of sexual materials. They argue that the ordinance is therefore overbroad.

Under the First Amendment overbreadth doctrine, a statute may be challenged on its face by "an individual whose own speech or expressive conduct may validly be prohibited or sanctioned . . . because it also threatens others not before the court--those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid." Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 503 (1985). The overbreadth doctrine, however, is considered "strong medicine," and therefore invoked only when the overbreadth is "substantial." Broadrick v. Oklahoma, 413 U.S. 601, 613, 615 (1973).

The appellants would have us read the statute to include "all manner of small media facilities." Appellants' Brief at 8. The definition set forth in the ordinance does not, however, compel such a broad interpretation. The ordinance applies only to booths, cubicles, stalls, or compartments that are used for viewing live performances, for presenting moving pictures, or for viewing publications. See Ordinance § 12-276(a). Further, these booths, cubicles, stalls, or compartments must be located within a business. See id. § 12-275(b). The ordinance sufficiently directs its application to

the type of motion picture arcade booths the City is attempting to regulate. We therefore reject the appellants' overbreadth claim.

The appellants also contend that the ordinance is an unconstitutional time, place, and manner restriction on protected speech. The ordinance states that "[e]ach motion picture arcade booth shall have at least one side completely open to adjacent public rooms or adjacent hallways and must be sufficiently illuminated," id. § 12-277(c)(2), and that the open side "shall not have any curtain, door, wall, enclosure or visual obstruction," id. § 12-277(c)(3). The appellants correctly point out that these requirements regulate the manner in which one may engage in speech activities (i.e., viewing movies in motion picture arcade booths). The appellants acknowledge, however, that time, place, and manner restrictions are constitutional on the condition that the restrictions "are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989) (citation to additional cases omitted). The appellants' contention is that the ordinance is not narrowly tailored because of the breadth of its application and that the ordinance is therefore unconstitutional. But the appellants already have argued that the ordinance is overbroad, and we already have decided that it is not.

We previously have held that similar open-booth ordinances are valid manner restrictions on speech. See Doe v. City of Minneapolis, 898 F.2d 612, 620 (8th Cir. 1990); Postscript Enters. v. City of Bridgeton, 905 F.2d 223, 227 (8th Cir. 1990). In the present case, we conclude that the ordinance is content-neutral, that the ordinance is narrowly tailored to serve a significant governmental interest, and that alternative channels for communicating such materials are left open. We have no difficulty deciding that the open-booth requirement in this case is a valid manner restriction. As such, it does not violate the First Amendment.

-4-

The appellants next take issue with the provisions in the ordinance that require motion picture arcade booth establishments to post approved signs containing information "describing the risks and methods of transmission of venereal diseases and listing unsafe sexual activities," Ordinance § 12-277(d), and to make available to patrons approved pamphlets "contain[ing] information on gonorrhea, syphilis and AIDS," id. § 12-278. The appellants assert that the requirement compels speech and thus violates the First Amendment. We disagree.

The First Amendment's guarantee of free speech "necessarily compris[es] the decision of both what to say and what not to say." Riley v. National Fed'n of the Blind of N.C., Inc., 487 U.S. 781, 797 (1988). But we have concluded that "First Amendment protection against compelled speech . . . has been found only in the context of governmental compulsion to disseminate a particular political or ideological message." United States v. Sindel, 53 F.3d 874, 878 (8th Cir. 1995). In this case, no political or ideological message is implicated in providing information about sexually transmitted diseases and unsafe sexual activities. We therefore hold that these requirements do not violate the First Amendment.

A related contention challenges the requirement that the signs and pamphlets be prepared or approved by the City's department of neighborhood and community services. See Ordinance §§ 12-277(d) and 12-278. The appellants claim that these provisions grant to officials too much discretion because no time limits for approval are included. They argue that "[c]ity officials could withhold approval of the required signs and pamphlets" and that "the ordinance can thus function as the equivalent of a license revocation." Appellants' Brief at 26.

To support their position, the appellants cite cases requiring procedural safeguards in the issuance of licenses to engage in speech activities. See Freedman v. Maryland, 380 U.S. 51, 59 (1965) (holding that an application for a license to exhibit a film must be granted or denied within a specified brief time period); Riley, 487 U.S.

at 802 (holding that failure to provide time limitations within which licensor must issue license to fundraiser is unconstitutional). The facts of this case, however, do not present an analogous situation. Surely there are instances where the threat of revoking a license and the delay in granting a license present serious constitutional issues. But the ordinance in question does not give City officials the power to revoke the appellants' licenses to operate upon noncompliance with the sign and pamphlet requirements. So any delay inherent in the approval of the signs and pamphlets is irrelevant.

The ordinance authorizes three methods of enforcement: administrative enforcement, municipal court enforcement, and injunctive relief. See Ordinance § 12-281. The administrative enforcement provision is the only method by which the City unilaterally can order closure of the noncompliant portion of the establishment.[4] See id. § 12-281(a)(3). The ordinance provides, however, that administrative enforcement can be utilized only for certain, specified violations of the ordinance, each of which specifically relates to the structure and occupancy of the arcade booths.[5] See id. § 12-281(a)(1). The sign and pamphlet regulations thus cannot be enforced by the administrative enforcement remedy of closure. The only remaining means of enforcement is to initiate legal proceedings in municipal court or to apply for injunctive

---

[4]Closure by administrative order can occur only after the City has served notice and an order setting forth the violations. See Ordinance § 12-281(a)(1). The establishment then has forty-eight hours from the time of service either to remedy the violation or to request a hearing. See id. § 12-281(a)(3). A hearing request stays the City's exercise of power to order closure until the hearing is concluded and a decision has been issued. See id. § 12-281(a)(4).

[5]The ordinance provides for administrative enforcement for "any violation of the requirements or duties set out in this article requiring that at least one side of [the booths be open], that the surface of [the walls between booths be metal and free of holes], and that no more than one person occupy a booth at any one time." Ordinance § 12-281(a)(1).

relief to the appropriate state court. We believe that these judicial enforcement methods do not function as the equivalent of a license revocation. The constitutional safeguard, which requires that final action on an application for a license to engage in protected speech activities be taken within a specified time period, simply does not apply in these circumstances.

The appellants next argue that the provision requiring booths "be maintained in a clean and sanitary condition" is unconstitutionally vague. Id. § 12-277(a). We will uphold this provision on a vagueness challenge unless persons "of common intelligence must necessarily guess at its meaning." Hynes v. Mayor of Oradell, 425 U.S. 610, 620 (1976) (quoting Connally v. General Constr. Co., 269 U.S. 385, 391 (1926)). "[M]athematical certainty" cannot be expected, so we look to whether "it is clear what the ordinance as a whole" requires. Grayned v. City of Rockford, 408 U.S. 104, 110 (1972). We conclude that a person of common intelligence would have no difficulty in knowing how to comply with the requirement that motion picture arcade booths be kept in a "clean and sanitary condition." Such booths are not surgical operating rooms, nor are they even establishments where food or drink is served. The requirement at most means only that the booths must be kept clean and free of trash and bodily fluids. The maintenance of extraordinary standards of cleanliness is not required.

We turn to the appellants' final argument that the open-booth requirement set forth in the ordinance violates Missouri's constitution. Under Missouri's constitution, "private property shall not be taken or damaged for public use without just compensation." Mo. Const. art 1, § 26. The appellants contend that the open-booth requirement deprives them of a vested property right, thereby rendering the ordinance unconstitutional under Missouri law.

To support their contention, the appellants rely primarily on Missouri cases involving zoning ordinances. Hoffmann v. Kinealy, 389 S.W.2d 745 (Mo. 1965) (en banc), exemplifies this line of cases. In Hoffmann, the Missouri Supreme Court held

that a newly enacted zoning ordinance, which prohibited the open storage of lumber, building materials, and construction equipment, constituted a taking under Missouri's constitution. See id. at 754-55. The court recognized the validity of "pre-existing lawful nonconforming uses," id. at 750, and concluded that termination of such pre-existing, lawful, nonconforming uses was a taking, see id. at 754-55. Hoffmann confirmed the rule, long assumed in Missouri, see id. 748-49, 750, that a pre-existing, lawful, nonconforming use is a vested property right, which cannot be abrogated by a newly enacted ordinance unless just compensation is paid to the landowner.

Missouri case law, however, restricts the application of the nonconforming-use rule to cases involving zoning ordinances. The Missouri Court of Appeals has defined nonconforming use as "a use of land which lawfully existed prior to the enactment of a zoning ordinance and which is maintained after the effective date of the ordinance even though not in compliance with use restrictions." Missouri Rock, Inc. v. Winholtz, 614 S.W.2d 734, 739 (Mo. Ct. App. 1981). Missouri courts expressly restrict the nonconforming-use rule to apply to cases where zoning ordinances are at issue. See, e.g., State ex rel. Nealy v. Cole, 442 S.W.2d 128, 131 (Mo. Ct. App. 1969) ("[A] comprehensive zoning ordinance must permit the continuation of non-conforming uses in existence at the time of the enactment of the ordinance . . . ."). Further, Missouri courts have distinguished zoning ordinances from other types of municipal regulations. See, e.g., Fleming v. Moore Bros. Realty Co., 251 S.W.2d 8, 15 (Mo. 1952) ("Zoning regulations are distinct in character from building regulations . . . ."). Therefore, we need not determine whether the appellants have established a lawful, nonconforming use because the ordinance in question is not a zoning ordinance. Rather, it is a public health and safety regulation and, as with most ordinances, reflects the City's exercise of its general police powers.

Under Missouri law, municipal ordinances enacted pursuant to a city's general police powers are reviewed for reasonableness. See Olympic Drive-In Theatre, Inc. v. City of Pagedale, 441 S.W.2d 5, 10 (Mo. 1969). A presumption of reasonableness

attaches to such ordinances, see Craig v. City of Macon, Missouri, 543 S.W.2d 772, 775 (Mo. 1976) (en banc), and the party challenging the ordinance has the burden to show that the ordinance is unreasonable, see Easy Living Mobile Manor, Inc. v. Eureka Fire Protection Dist., 513 S.W.2d 736, 738-39 (Mo. Ct. App. 1974).

In Olympic Drive-In, the Missouri Supreme Court struck down a municipal ordinance as "unreasonable, oppressive and confiscatory." Olympic Drive-In, 441 S.W. 2d at 10. The ordinance would have compelled a drive-in theater to relocate its screen and construct a fence of adequate height so that movies would no longer be visible from public streets. The drive-in theater would have been forced to spend $250,000 to $280,000 to comply with the ordinance. This was twice the theater's initial investment, and evidence showed that the theater could not raise that much capital. Moreover, the court concluded that the required fencing or change of screen location would not achieve the city's stated purpose for the ordinance, the alleviation of traffic congestion. The court also looked to what it considered the real purpose of the ordinance, "to satisfy the demands of the citizens that something be done about the plaintiff showing pictures of nudes and semi-nudes which could be seen from the streets," and concluded that the ordinance's requirements were too sweeping. Id. at 10. The circumstances in the present case are far removed from those in Olympic Drive-In.

We hold that the ordinance in the case at hand is reasonable. The appellants presented no evidence regarding the cost involved in removing the doors from the booths and otherwise complying with the ordinance, and they likewise presented no evidence to show the amount of any predicted loss of revenue that would result from the removal of the doors. We also believe the ordinance is reasonably calculated to curtail sexual activity inside the booths and the attendant spread of diseases, which is the stated purpose of the ordinance. Finally, the requirements of the ordinance do not infringe upon any fundamental rights. Not only are patrons still able to view inside the booths whatever movies they choose, but they also may view the same movies at the

appellants' establishments in a theater setting, and they may rent or purchase at the appellants' establishments those same movies to view in the privacy of their homes.

In sum, we find no merit in any of the appellants' contentions. We therefore affirm the decision of the District Court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.